JAMES D. CARHART *et al.*, plaintiffs in error, *vs.* MARY VANN, defendant in error.

Where land is "regularly advertised and sold at administrator's sale," (and the record states no more) and is afterwards levied on under judgment obtained against the intestate in his life time, and the Court decides that the administrator's sale divests the judgment lien—to which judgment exception is taken—the plaintiff in error must show affirmatively that the estate was solvent, and the order of sale was not granted for the payment of debts, but for distribution only, in order to entitle him to a reversal of the judgment, even if this would do so. And as to this, we reserve our opinion.

Administrator's sale. Title. Judgment lien. Before Judge HARRELL. Miller Superior Court. April Term, 1872.

James D. Carhart and William B. Carhart brought three actions of complaint for different tracts of land situated in the county of Miller, two against Mary Vann and the third against Mary Vann and Crawford Long. The cases were submitted to the Court upon the following agreed facts:

"That the property in controversy was the property of Joshua S. Vann; that Vann died some time in 1866; that his estate was regularly administered upon, and the land in controversy regularly advertised and sold at administrator's sale; that the parties defendant hold under title acquired at said administrator's sale; that subsequent to said administrator's sale a *fieri facias*, issuing from the fifth Circuit Court of the United States for the Southern District of Georgia *vs.* Joshua Vann, was levied upon the same land; that the said *fieri facias* was sued out before the death of Joshua Vann, and levied as stated above upon the land in controversy after

its regular sale at administrator's sale; that plaintiffs claim title under this last sale.

The Court held that plaintiffs acquired no title under the sale by virtue of the levy under the aforesaid execution. To which decision plaintiffs excepted and now assign said ruling as error.

FLEMING & RUTHERFORD; G. J. WRIGHT, for plaintiffs in error.

R. SIMS; J. A. & ISAAC BUSH, for defendants.

MONTGOMERY, Judge.

At common law, or rather by the operation of the statute of Westminster, 2, 13 Ed., 1, judgment liens existed against the lands of the debtor from the first day of the term at which the judgment was obtained. The statute of frauds, sections 13, 14 and 15, altered the rule so far as purchasers were concerned, and enacted that the judgment as to them should date from the time at which it was actually obtained. If, after judgment against the debtor, he died, his land passed to his heir, cumbered with the judgment lien, the creditor being obliged, of course, to look first to the personal assets in the hands of the executor or administrator for the payment. By the 16th section of the statute of frauds, these were bound by the judgment only from the time the execution was delivered to the sheriff; and the section required the sheriff to indorse on the execution the date of the delivery to him; "for the better manifestation of the said time." This judgment lien so fixed upon the personal assets did not prevent the executor or administrator from disposing of them, the rule being "that an executor or administrator has an absolute power of disposal over the whole personal effects of his testator or intestate; and that they cannot be followed by creditors, much less by legatees, general or specific, into the hands of the alienee. The principle is that the executor or administrator in many instances *must* sell in order to

Carhart *et al. vs.* Vann.

perform his duty in paying debts, etc.; and no one would deal with an executor or administrator if liable afterwards to be called to account:" 2 Williams' Executors, 670, (2d American Edition, from 2 London;) Toller's Executors, book 3, chap. 1, sec. III.

Lord Thurlow, in Scott *vs.* Tyler, 2 Dick., 725, (quoted in Wms' Ex'rs, 671) says, "It is of great consequence that no rule should be laid down here which may impede executors in their administration, or render their disposition of the testator's effects unsafe or uncertain to a purchaser. His title is complete by sale and delivery. What becomes of the price is of no concern to him." Again in Farr *et al. vs.* Newman, 4 T. R., 630, Grose, J., says, "The power of selling or disposing of the goods of the testator the executor must have; it is necessarily incident to his office; without that power his trust cannot be executed, nor can the purposes for which it is given be answered. Therefore, when he sells, the law intends that he sells the goods of the testator to answer the purposes for which the power of selling was given; and in so doing he does that which is necessary to his authority, and therefore lawful, just and right." See also Buller, Judge's opinion; *Ibid.*, 641, and Ashhurst's, page 644; see 1 *Kelly,* 344; 7 Johns. Ch., 150. The judgment creditor whose lien attached to the personalty, living the debtor, and within a year before his death, may levy upon such personalty, *when found in the hands of the executor or administrator*: 2 Wms' Ex'rs, 1422. I will add that a judgment is only a general security, not a specific lien upon the property of the debtor: 2 Tidd's Prac., 936. Under the authorities quoted, the executor or administrator may, at common law, divest the general lien of a judgment which has attached upon the goods of the testator or intestate by placing the execution in the hands of the sheriff before the death of the debtor. Whether they can sell the property of the testator so as to divest *specific* liens as a mortgage, for instance, it is not necessary to consider.

By our law, all the property of a debtor is bound by a

judgment against him from the time of its rendition. So far as personalty, then, is concerned, if the debtor die after judgment, no distinction is perceived between the power of the executor or administrator to dispose of it and divest the judgment lien under our statute, and the power under the statute of frauds where the execution was placed in the sheriff's hands before the death of the debtor. But the power of the representative to dispose of the real estate of the decedent is more limited. He can only sell that when necessary to pay debts, or for purposes of distribution : Code 2518.

We are very clear that a sale of land to pay debts would divest a judgment lien. The reasons given for divesting judgment liens on personalty apply with full force. Whether a sale for purposes of distribution alone would do so, we are not now prepared to say. Where the record fails to disclose the purpose of the sale and the condition of the estate, but does disclose an outstanding judgment against the deceased, we will not presume that the sale was for distribution. Indeed, the more natural presumption would be that the sale was for the payment of debts, and that the money is now in the hands of the administrators for that purpose, or has been paid in satisfaction of debts of higher dignity than that of the judgment creditor. For it is to be observed that although a judgment debt may be the highest in dignity during the life of the debtor, on his death it at once takes rank below four other classes : 1st. Funeral expenses. 2d. Expenses of administration, including a provision for the support of the family of the deceased debtor. 3d. Taxes and other debts due the State, or United States. 4th. Debts due by the deceased as trustee for any appropriation of trust funds to his own use. To these may be added the widow's claim for dower. See *Simmons vs. Latimer,* 37 *Georgia,* 495; Code, 2494. This enumeration shows the necessity of allowing the administrator or executor to divest judgment liens by sale of the decedents' property to pay the debts of the estate. Otherwise, the practical effect would be to give the judgment debt priority over the four classes hereinbefore named, for prop-

erty would bring little or nothing at administrator's sale, if liable to be afterwards levied on, and sold under judgments obtained against the intestate.

Our conclusion then is, that a sale of land by an administrator, legally made for the payment of debts of the intestate, divsets judgment liens, and where the record fails to show in express terms that the estate is solvent, and that the property was sold for distribution alone, but does show an outstanding unsatisfied judgment against the estate which has been levied on the land sold by the administrator, the more natural presumption is, that the sale by the administrator was for the purpose of paying the debts of the estate, and that being so, the lien of judgments obtained in the lifetime of the intestate is divested by the sale.

Judgment affirmed.